UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JIMMIE LEE JONES,

    Petitioner,

v.

M. SPEARMAN,

    Respondent.

No. 2:18-cv-0387 MCE DB P

FINDINGS AND RECOMMENDATIONS

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his 2016 conviction in the Shasta County Superior Court for corporal injury to a cohabitant, misdemeanor hit-and-run, criminal threats, and four counts of assault with a deadly weapon. Petitioner alleges ineffective assistance of trial and appellate counsel and trial court errors in finding the victim unavailable and permitting the introduction of the victim's statements to police officers. For the reasons set forth below, this court will recommend the petition be denied.

## BACKGROUND

**I.    Facts Developed at Trial**

The California Court of Appeal set out the following summary of the facts established at trial:

> Defendant and J.C. lived together and a friend reported to a police investigator that defendant hit J.C. often, resulting in black eyes and bruises. One evening in April 2015, defendant struck J.C. with his

> closed fists and choked her, threatening to kill her. J.C. was planning to leave defendant because she was scared.
>
> On May 2, 2015, J.C. and defendant began arguing and then physically fighting in a parking lot. Defendant ultimately drove his van into the driver's door of the SUV where J.C. was sitting.
>
> Police Officer Jamie Rouland responded, took J.C.'s statement and photos of her injuries, and observed the evidence at the scene. J.C. explained she and defendant had previously argued and he struck her with a baseball bat on her leg. She grabbed two knives from the kitchen to defend herself and he left. Later, he returned with a pitchfork, stating that he was going to kill her. He lunged at her and she raised her arm to protect herself. He stabbed her in the right forearm. When defendant dropped the pitchfork, she picked it up and chased him in the yard. When a neighbor intervened, defendant became apologetic and offered to take J.C. to the hospital. She was afraid to go with him, believing he would kill her. Later that night, J.C. went to the hospital by herself to have her wound treated. She received stitches to close the wound. She lied to hospital staff, claiming she had fallen on a pitchfork while chasing her dog in the yard. She did not want the hospital calling the police, fearing defendant would retaliate against her. The officer testified that J.C. looked fearful and was upset and distraught when telling him what happened. Hospital records reflected that J.C. had been treated on April 30, 2015.
>
> Defendant was arrested on May 2, 2015 at the couple's trailer. An officer found two pitchforks on the property.
>
> A criminal protective order was served on defendant on May 5, 2015, prohibiting him from having any contact with J.C. But between May 5, and June 12, 2015, while defendant was in jail, phone calls and jail visits between defendant and J.C. were recorded. He discussed with her whether the case could proceed without a victim, told her how to explain her injury, told her she could retract her statement and suggested what she should say, and referred to letters he had written instructing her to do what he asked.

People v. Jones, No. C082146, 2017 WL 2610522, at *1 (Cal. Ct. App. June 16, 2017).

## II. Procedural Background

The jury convicted petitioner of corporal injury to a cohabitant (Cal. Pen. Code § 273.5, subd. (a)), misdemeanor hit-and-run (Cal. Veh. Code § 20002(a)), criminal threats (§ 422; count 3), and four counts of assault with a deadly weapon (Cal. Penal Code § 245(a)(1)). In connection with count 5, the jury found that petitioner inflicted great bodily injury. (Cal. Penal Code § 12022.7(a).) In bifurcated proceedings, petitioner admitted three prior strike convictions (Cal. Penal Code § 1170.12), three prior serious felony convictions (Cal. Penal Code § 667 (a)(1)), and

2

four prior prison terms (Cal. Penal Code § 667.5(b)). Those crimes were:

> In 1989 defendant was convicted of felony corporal injury to a cohabitant; in 2000 he was convicted of criminal threats; in March 2001 he was convicted of misdemeanor corporal injury to a cohabitant; and in August 2009 he was convicted of a felony related to an assault on a cohabitant.

Jones, 2017 WL 2610522, at *1-2.

After the verdict, and prior to sentencing, petitioner made a Marsden[1] motion, in which he asked the court to appoint him new counsel. (See Record of Transcript ("RT") 480 (ECF No. 14-8 at 486).[2]) The trial court denied that motion. See Jones, 2017 WL 2610522, at *2. Petitioner also sought to dismiss the prior strike allegations. The trial court denied that motion as well and sentenced petitioner to 126 years to life in prison. Id.

Petitioner was appointed counsel for appeal. Appellate counsel filed a Wende[3] brief, indicating that she found no arguable issues for appeal and asking the Court of Appeal to review the record in this case. (ECF No. 14-2 at 19.) Petitioner then filed a supplemental brief with the Court of Appeal. (ECF No. 14-3.) While not entirely clear, petitioner appeared to be raising a claim of ineffective assistance of trial counsel based on the reasons he set forth at the Marsden hearing. This court does not have a transcript of that confidential hearing. (See RT 480.) According to the California Court of Appeal, at the Marsden hearing, petitioner complained that his trial attorney failed to investigate or call witnesses to testify. Jones, 2017 WL 2610522, at *2. The Court of Appeal considered that claim as one alleging trial court error in denying petitioner's Marsden motion. It found no abuse of discretion. Id. at *3.

In his supplemental appellate brief, petitioner also argued his appellate counsel was ineffective for having "painted a picture of [petitioner] even more frightening than the

---

[1] A motion brought under People v. Marsden, 2 Cal. 3d 118 (1970) seeks to discharge appointed counsel.

[2] Respondent lodged relevant documents from the state court record electronically. They are cited herein by their electronic filing numbers. The court provides pinpoint citations to the pagination provided by the electronic filing system for all documents except the Record of Transcript. For the trial transcript, this court cites to the pagination contained in the transcript.

[3] People v. Wende, 25 Cal. 3d 436 (1979).

3

prosecution could paint." Id. The Court of Appeal stated that its review of the record showed that appellate counsel was not deficient. Id. The Court of Appeal affirmed the judgment on June 16, 2017.

Petitioner petitioned the California Supreme Court for review. (ECF No. 14-4.) The claims he raised there mirror his claims here – ineffective assistance of trial counsel for failing to challenge the victim's unavailability, ineffective assistance of appellate counsel, and trial court error in finding the victim unavailable. The California Supreme Court denied review on August 23, 2017. (ECF No. 14-5.)

Petitioner filed the present habeas petition on February 20, 2018. (ECF No. 1.) Respondent filed an answer (ECF No. 13) and petitioner filed a traverse (ECF No. 21).

**STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011)

(citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "'may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably.'" Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 567 U.S. 37 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Id. at 1451. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 76-77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams, 529 U.S. at 405-06). "Under the 'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Andrade, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." (Internal citations and quotation marks omitted.)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652,

664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

There are two ways a petitioner may satisfy subsection (d)(2). Hibbler v. Benedetti, 693 F.3d 1140, 1146 (9th Cir. 2012). He may show the state court's findings of fact "were not supported by substantial evidence in the state court record" or he may "challenge the fact-finding process itself on the ground it was deficient in some material way." Id. (citing Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004)); see also Hurles v. Ryan, 752 F.3d 768, 790-91 (9th Cir. 2014) (If a state court makes factual findings without an opportunity for the petitioner to present evidence, the fact-finding process may be deficient and the state court opinion may not be entitled to deference.). Under the "substantial evidence" test, the court asks whether "an appellate panel, applying the normal standards of appellate review," could reasonably conclude that the finding is supported by the record. Hibbler, 693 F.3d at 1146 (9th Cir. 2012).

The second test, whether the state court's fact-finding process is insufficient, requires the federal court to "be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." Hibbler, 693 F.3d at 1146-47 (quoting Lambert v. Blodgett, 393 F.3d 943, 972 (9th Cir. 2004)). The state court's failure to hold an evidentiary hearing does not automatically render its fact finding process unreasonable. Id. at 1147. Further, a state court may make factual findings without an evidentiary hearing if "the record conclusively establishes a fact or where petitioner's factual allegations are entirely without credibility." Perez v. Rosario, 459 F.3d 943, 951 (9th Cir. 2006) (citing Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003)).

If a petitioner overcomes one of the hurdles posed by section 2254(d), this court reviews the merits of the claim de novo. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised."). For

the claims upon which petitioner seeks to present evidence, petitioner must meet the standards of 28 U.S.C. § 2254(e)(2) by showing that he has not "failed to develop the factual basis of [the] claim in State court proceedings" and by meeting the federal case law standards for the presentation of evidence in a federal habeas proceeding. See Cullen v. Pinholster, 563 U.S. 170, 186 (2011).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, [this court] may consider both decisions to 'fully ascertain the reasoning of the last decision.'" Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc) (quoting Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 293 (2013). When it is clear, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

## ANALYSIS

The victim did not testify at trial. After the prosecution established the victim's unavailability, the trial court permitted the introduction of the victim's statements to law enforcement. In his first claim, petitioner argues his trial attorney was ineffective when he failed to challenge the victim's unavailability and failed to challenge the trial court's finding that he had

forfeited his Confrontation Clause rights by his wrongdoing. (Pet. (ECF No. 1 at 5-7).) He further argues his appellate counsel was ineffective for failing to raise these issues on appeal. (Id. at 8.) In his second claim, petitioner contends the trial court erred when it found the victim unavailable and when it found petitioner forfeited his Confrontation Clause rights. (Id. at 10-15.)

I.  **Background Relevant to Petitioner's Claims**

   A. **Facts Developed in State Court**

On February 17, 2016, the state court held a hearing regarding the prosecution's efforts to locate the victim and obtain her presence in court. The prosecutor then provided a lengthy description of the attempts to procure the victim's presence. (RT 78-83.) The prosecutor first explained that the case had been originally charged as Case No. 15F2367. The trial was continued for various reasons and was eventually scheduled for December 2015. While the victim had been served with a subpoena for the original trial date, prosecutorial staff was unable to locate her for service after that time. The prosecutor informed the court that "[w]hen it came time for trial, . . . we had note[s] from different sources that she had relocated, that she was out at an undisclosed location in Montgomery Creek and that she had expressed to multiple people that she was not going to participate in the court process." On the morning of trial, when the victim still had not been served, the prosecutor dismissed the case.

The prosecutor explained that her office was aware that the victim had been "very hesitant and very fearful" to talk with the officer at the scene who took her original statement. The officer was unable to take her statement for about an hour. The victim's next interview, also in May 2015, was with Officer Garnero. She told him "that she was still afraid and that she would not be taking the stands, and she said those words multiple times."

After the prosecutor dismissed the original case, she refiled it in December 2015 as Case No. 15F7519. The prosecutor told the court:

> At that point, I asked two investigators from the District Attorney's Office to specifically start -- well, continue. One investigator had been looking for her continuously for two weeks and was unable to locate her. Two investigators then started looking, and it took them, as what I am told, approximately six weeks. The one investigator in particular went to a residence in Montgomery Creek multiple times

8

> a week for many weeks. He felt that she was inside of the residence, but she was not coming to the door, and she did not come outside.
>
> He tried to wait outside, you know, and hide and see if she would come outside so that he could effectuate service and was unable to do that. It's my understanding that he did this type of activity multiple different times.
>
> Finally he was able to serve her. He located her outside-doing yardwork one day, and that was -- I have the subpoena here, signed by him. That was on -- she was out in her yard. That was on January 26th of 2016, and its signed by Kert Rulofson, investigator from my office.

The prosecutor explained that the subpoena commanded the victim to appear in court on February 2, 2016 at 9:00 a.m. The victim showed up at approximately 9:20 or 9:30 that morning. However, at that point, the judge had left the courtroom to handle other business. The prosecutor instructed the victim to stay in the courtroom and wait for the judge to return. The prosecutor reminded the victim that she was required to be there by the subpoena. The victim told the prosecutor she would not testify and would not be testifying at trial.

The victim then left the courtroom. She then stood outside the courthouse and left and returned several times. At 11:00 a.m., the prosecutor asked the victim to follow her into the courtroom. The victim refused to do so. Eventually, the marshal located her and brought her to the courtroom. The judge ordered the victim to appear in court for trial on February 16, 2016 at 8:30 a.m. The prosecutor stated that she:

> specifically wrote out all of that information on a sticky note for [the victim] and handed it to her. I let her know that Department 7 was located on the third floor in the main courthouse. Judge Flynn asked her to give me contact information for her. She told me that she does not have a phone and that she knew how to get a hold of me, and she had no information to provide me.

On the first day set for trial, February 16, the victim did not appear. The prosecutor stated that she and others from her office checked the halls outside the courtroom multiple times that morning to look for the victim. The judge continued the trial until the following day. The prosecutor obtained a body attachment warrant and took it to the marshal's office. However, she was told many marshals were ill that day.

////

> At that point I was in contact with investigators from my office, and three separate investigators from my office were attempting to locate her. I had contacted them by text message. Investigator Garnero left the courthouse with a copy of the warrant as well. He went to locations where she has been known to sleep overnight or hang out with people, known associates. He was unable to locate her. My investigators from my office spent the entire day yesterday looking in different locations and in communication with people who generally know her location, and nobody was able to locate her, and it's my understanding at this point, nobody can even get into contact with her.

The prosecutor concluded by pointing out that the victim was not in court on February 17, the day of the hearing.

When the court asked for comments from petitioner's trial attorney, Mr. Ryan, he stated that he would "submit" on the issue of unavailability.

**B. State Trial Court's Ruling**

The trial judge found that the prosecutor "has made has made reasonable efforts and diligent efforts to attempt to locate this witness and procure her attendance, and it appears . . . that this witness is deliberately making herself unavailable to be located." (RT 83-84.) The judge concluded that he found the victim "unavailable" under California Evidence Code § 240(a)(5) (witness is "unavailable" when the proponent of the statement "has exercised reasonable diligence but has been unable to procure [the witness's] attendance by the court's process.") (RT 84.) Petitioner's trial attorney made no objection to that ruling.

The prosecutor then sought to have three statements that the victim made to officers read to the jury. They were: (1) a May 2, 2015 statement to an officer about the May 2, 2015 incident in which petitioner rammed his car into the victim's friend's car in a Jack-in-the-Box parking lot; (2) a May 2, 2015 statement to the same officer about an April 30, 2015 incident in which petitioner struck the victim with a baseball bat and stabbed her with a pitchfork; and (3) a May 22, 2015 statement to a second officer. The prosecutor sought to have these statements admitted under California Evidence Code § 1370. Section 1370 is an exception to the hearsay rule for witness statements that meet the following conditions: (1) the statement purports to describe the infliction or threat of injury upon the witness; (2) the witness is unavailable; (3) the statement was made at or near the time of the injury or threat; (4) the statement was made under circumstances

indicating its trustworthiness; and (5) the statement was made in writing to a law enforcement official.

Petitioner's trial attorney objected to admission of all the statements under section 1370 because, he argued, that section violates the Confrontation Clause. (RT 85-86.) He then went on to state that he had no further objections to the statements and felt the prosecutor had met her burden with respect to those recorded by law enforcement.

The trial judge ordered a recess in the proceedings to allow counsel, and the court, to research the Confrontation Clause issue. (RT 95, 102.) When the parties returned to court, the trial judge questioned counsel about whether petitioner had forfeited his right to assert the Confrontation Clause by his attempts to dissuade the victim from testifying. (RT 113.) Defense counsel conceded that if a "defendant is actively involved in causing a witness to be unavailable, that certainly he's going to be estopped . . . from asserting the confrontation clause." (Id.) But, he argued, the evidence in this case did not meet that burden because the recorded jail calls preceded trial by almost nine months and, in them, petitioner did not explicitly threaten the victim. (RT 113-14.)

The trial judge then reviewed the available evidence, primarily transcripts of the victim's visits and phone calls with petitioner, regarding petitioner's attempts to dissuade the victim from testifying. The judge found that on May 5, 2015, the court ordered petitioner to have no contact with the victim. (RT 127-28.) He then considered portions of the transcripts. First, later on May 5, petitioner spoke with the victim. He asked her whether she had told "them how you got them, uh, them injuries." The victim replied that she "didn't say a word." (ECF No. 14-9 at 162.) He also told her "it can all be retracted. You know, I . . . didn't do anything wrong. Hear me?" (Id. at 153.) He then asked whether the victim had told the friend with her in the car, Brandi, that the car incident had been an accident. The victim said she would tell Brandi. (Id.) Petitioner further asked the victim why there were charges for hurting her and she told him that the information was based on what Brandi told officers. (Id. at 156.) Petitioner replied, "But babe it's not a domestic so . . . they can't keep me to trial. . . . There's no – no victim, no case." (Id.)

////

In a conversation on May 12, petitioner told the victim, "I need help" with "[t]his case." (ECF No. 14-9 at 149.) The victim told him she was "tryin' to do everything I can." (Id.) When petitioner told her there was "paperwork" that said "you told 'em that I – that I – I hit you with a bat." (Id. at 152.) The victim denied having told anyone that. (Id.)

Then, on May 22, 2015, when the victim was interviewed by a second officer, she recanted some of her prior statements and told him she was "never going to take the stand." (Id.) She asked the officer to "leave me alone." (Id.)

A conversation on June 5, 2015 was also recorded. In it, petitioner asked the victim if she had read "the letters." She responded that she had read "all of the letters." Petitioner then stated that "when I wrote those letters I . . . laid it all, you know." He told her she needed to talk to the investigator again. (ECF No. 14-9 at 174.)

The trial judge held that the victim's May 2 statements to an officer regarding the car ramming incident at the Jack-in-the-Box restaurant were excepted from the hearsay rule as spontaneous declarations. (RT 130-31.) He also found both statements made on May 2 admissible under Evidence Code § 1370 based on petitioner's forfeiture of his Confrontation Clause rights by wrongdoing. (RT 130-31, 136.) The judge had considered the standards for this rule of forfeiture set out in Giles v. California, 554 U.S. 353, 359 (2008). (RT 121-22.) With respect to the May 22 statement, petitioner's trial attorney agreed that it could come in because it "cuts both ways for both sides" and the "rule of completeness" made it admissible. (RT 137.)

**C. Decision of the Highest State Court**

The California Supreme Court issued a summary denial of petitioner's petition for review. Typically, this court would then look to the last reasoned decision of a state court to determine the California Supreme Court's reasoning. However, here, it is not clear what constitutes the last reasoned decision of the state court. Petitioner appears to have raised different claims in the California Court of Appeal than the ones he raised in the California Supreme Court and in the

////

////

////

present § 2254 petition.[4] Therefore, the California Court of Appeal's reasoned decision does not address the claims raised in the California Supreme Court and here.

It is possible to consider the trial court's on-the-record rulings on the issues of the unavailability of the victim/witness and petitioner's forfeiture of the Confrontation Clause argument as the last-reasoned state court decisions on those issues. However, the trial court did not rule on petitioner's ineffective assistance of counsel claims. This court has only the California Supreme Court's silent denial of those claims to consider.

Because the California Supreme Court's decision was a denial without comment, this court should presume it was a denial on the merits of those newly raised claims. See Richter, 562 U.S. at 99. While the federal court cannot analyze just what the state court did when it issued a summary denial, this court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Id. at 98. This court "must determine what arguments or theories ... could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 101. Petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

**D. Petitioner's Claims**

**A. Ineffective Assistance of Counsel**

Petitioner argues his trial attorney was ineffective when he conceded that the victim was unavailable to testify at trial and when he failed to challenge the trial court's admission of the victim's statements to police officers. Petitioner further alleges his appellate counsel was ineffective for failing to raise these claims on appeal.

////

---

[4] To the extent there is a question about whether petitioner exhausted his claims when he raised them for the first time in his petition for review, it is not necessary to resolve it. Under 28 U.S.C. § 2254(b), this court cannot grant a habeas petition on an unexhausted claim. It may, however, deny an unexhausted claim. Because this court recommends petitioner's claims be denied on the merits, it need not determine whether petitioner exhausted those claims.

13

**1. Legal Standards**

To succeed on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." Id. at 687–88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 687).

A reviewing court is required to make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 669; see Richter, 562 U.S. at 107. Reviewing courts must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. This presumption of reasonableness means that the court must "give the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170, 195 (2011) (internal quotation marks and alterations omitted).

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. "The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112. A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697), amended and superseded on other grounds,
////

385 F.3d 1247 (9th Cir. 2004); United States v. Ray, No. 2:11-cr-0216-MCE, 2016 WL 146177, at *5 (E.D. Cal. Jan. 13, 2016) (citing Pizzuto, 280 F.3d at 954).

**2. Discussion**

This court need not reach the issue of the reasonableness of counsel's conduct where the claim can be resolved on the issue of prejudice. See Shackleford v. Hubbard, 234 F.3d 1072, 1080 (9th Cir. 2000). That is true here. Petitioner fails to show he was prejudiced by any of his attorneys' alleged errors.

The trial court relied on California Evidence Code § 1390 to find that the victim was unavailable and that, by his wrongdoing, petitioner had forfeited his rights to assert her out-of-court statements were hearsay. Evidence Code § 1390 provides:

> (a) Evidence of a statement is not made inadmissible by the hearsay rule of the statement is offered against a party that has engaged, or aided and abetted, in the wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness...
>
> (b)(1) The party seeking to introduce a statement pursuant to subdivision (a) shall establish, by a preponderance of the evidence, that the elements of subdivision (a) have been met at a foundational hearing.

Cal. Evid. Code § 1390 (2013). The trial court also looked to the standards set out by the United States Supreme Court in Giles v. California to find petitioner forfeited his hearsay arguments. 554 U.S. 353, 365 (2008). In that case, the Court recognized that forfeiture by wrongdoing permits admission of unavailable witness statements where the defendant's conduct was deliberate witness tampering. Id. at 366.

The constitutional basis for petitioner's right is the Sixth Amendment to the United States Constitution, which grants a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. "The 'main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.'" Fenenbock v. Dir. of Corrs. for Calif., 692 F.3d 910, 919 (9th Cir. 2012) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986)). In 2004, the United States Supreme Court held that the Confrontation Clause bars the state from introducing into evidence out-of-court statements which are "testimonial" in nature unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the

witness, regardless of whether such statements are deemed reliable.  Crawford v. Washington, 541 U.S. 36  (2004).  In Giles, as described above, the Court reasserted the forfeiture-by-wrongdoing exception to the Crawford rule.

First, petitioner fails to show that had counsel challenged the victim's unavailability, there is a reasonable probability that challenge would have been successful.  A finding of unavailability requires that "the prosecutorial authorities have made a good-faith effort to obtain [the witness's] presence at trial."  Barber v. Page, 390 U.S. 719, 725 (1968).  Under state law, unavailability is determined by whether the prosecutor "exercised reasonable diligence but was unable to procure" the witness's attendance.  Cal. Evid. Code § 240(a)(5).  Petitioner's argument appears to be limited to contending that the prosecution's efforts were insufficient between February 16, when the victim did not appear for the first day of trial, and February 17, the date the trial judge found the victim unavailable and the trial began.  However, the prosecutor told the judge that on February 16 she sent three investigators from her office to look for the victim.  They "went to locations where she has been known to sleep overnight or hang out with people, known associates."  They "spent the entire day . . . looking in different locations and in communication with people who generally know her location, and nobody was able to locate her, and it's my understanding at this point, nobody can even get into contact with her."  These statements, along with the history of the victim's absence from court, provided more than ample support for the trial court's finding of unavailability on February 17.  Petitioner argues only that the prosecution did not attempt to find the victim at her home in Montgomery Creek.  It is not clear why petitioner feels that is the case.  The prosecutor did not so inform the trial court and a reasonable inference from the prosecutor's statement that investigators went to locations where the victim "has been known to sleep overnight" is that they checked the victim's home.  Petitioner fails to demonstrate a reasonable probability that trial counsel could have changed the trial court's unavailability finding.

Second, petitioner argues counsel should have better challenged the forfeiture by wrongdoing finding.  It is not entirely clear just what petitioner is contending counsel should have done.  Counsel did argue that the Confrontation Clause prevented the admission of the victim's

statements to officers and that his conversations with the victim in May 2015 were too distant to demonstrate that he caused her absence from court nine months later. Whether or not that conduct was reasonable, petitioner again fails to show prejudice.

The Ninth Circuit has described the forfeiture by wrongdoing exception as follows:

> The forfeiture-by-wrongdoing doctrine is an exception to the Confrontation Clause's protections. That doctrine permits the introduction of a testimonial statement by an unavailable witness if the preponderance of the evidence shows that the "witness is absent by [the defendant's] own wrongful procurement." *Reynolds v. United States*, 98 U.S. 145, 158, 25 L.Ed. 244 (1878); *United States v. Johnson*, 767 F.3d 815, 822–23 (9th Cir.2014) (holding that forfeiture by wrongdoing must be proven by a preponderance of the evidence).

Carlson v. Attorney Gen. of Calif., 791 F.3d 1003, 1009 (9th Cir. 2015). The court recognized that to meet this standard, there must be an "affirmative action on the part of the defendant that produces the desired result, non-appearance by a prospective witness against him in a criminal case." Id. at 1010.[5] The defendant must do more than simply "acquiesce" to the witness's decision not to participate.

In the present case, the trial court had evidence of the phone calls, made in violation of a no-contact court order, in which petitioner stressed to the victim that if there was "no victim" then there was "no crime." Petitioner argues that these phone calls were relevant to the victim's unavailability in December 2015, but not to her unavailability for the trial of the re-filed case in February 2016. The court does not find that distinction logical. Certainly, if the victim was influenced by petitioner's requests to absent herself in December, she would very likely remain influenced by those requests just three months later.

Further, the trial court had additional evidence showing that the victim feared the defendant. With this sort of support for a finding that defendant "procured" the victim's absence, the California Supreme Court was not unreasonable in its apparent holding that petitioner failed

////

---

[5] California law has a similar standard: "A declarant is not unavailable as a witness if the . . . absence of the declarant was brought about by the procurement or wrongdoing of the proponent of his or her statement for the purpose of preventing the declarant from attending or testifying." Cal. Evid. Code § 240(b).

17

1 | to establish a reasonable probability that had counsel further challenged the introduction of the
2 | victim's statements, the result would have been different.

Finally, because this court finds above that petitioner has failed to establish prejudice from any error of trial counsel, it follows that his appellate counsel was not constitutionally ineffective when she did not raise these issues on appeal because they would not have been successful.

### B. Trial Court Error

Petitioner's second claim is that the trial court erred in finding the victim unavailable and in finding petitioner's conduct in persuading the victim not to testify amounted to his forfeiture of his Confrontation Clause rights. For the reasons set out above, the California Supreme Court was not unreasonable in concluding that the trial court did not err. There was ample evidence for the trial court to conclude that the prosecution made a good faith attempt to locate the victim. And, the record provided the trial court with a reasonable basis to conclude that a preponderance of the evidence showed that petitioner had purposefully pressured the victim not to appear at trial.

Petitioner also argues in his traverse that the trial judge was barred from reconsidering the issue of the victim's availability because a court had already concluded that she was refusing to be present at the original, December 2015, trial date. Petitioner appears to be arguing that the trial court could not find in December that the victim choose to absent herself and then find in February that the victim was unavailable due to petitioner's wrongdoing. The doctrine of collateral estoppel is inapplicable here for a variety of reasons, including the fact that the trial court's statement in December 2015 was not a ruling "necessary to the court's judgment" and the issue regarding the victim's availability in December was not identical to the issue of the victim's availability in February 2016. See Allen v. McCurry, 449 U.S. 90, 94 (1980) (once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a later suit) Further, the fact that the victim purposefully failed to be in court is not at odds with the court's determination in February 2016 that petitioner caused her absence. Certainly, petitioner could have pressured the victim and she could have chosen to bow to that pressure. In sum, petitioner provides no basis for this court to conclude that the trial court's decisions that the victim was unavailable and that petitioner's wrongdoing resulted in the

18

forfeiture of his Confrontation Clause rights were so lacking in justification that there was error "beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's petition for a writ of habeas corpus be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In the objections, the party may address whether a certificate of appealability should issue in the event an appeal of the judgment in this case is filed. See Rule 11, Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: May 28, 2019

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DB/prisoner-habeas/jone0387.fr